**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **KELLY SHOFNER,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 26-931** |
| **SHENYANG DADONG DISTRICT PEOPLE'S COURT,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OPINION AND ORDER**

Proceeding *pro se*, Plaintiffs Kelly and Joseph Shofner bring this action arising from an early-education investment project in Shenyang, China, asserting claims under the Foreign Sovereign Immunities Act, the Alien Tort Statute, and the Torture Victim Protection Act.  See ECF No. 1 (Compl.) at 1–4.  Plaintiffs filed an eight-page Complaint on the public docket.  Id. They concurrently moved to file a separate, unredacted Complaint — together with a voluminous set of exhibits — under seal.  See ECF No. 2 (First Sealing Mot.).  The Court denied that initial Motion for failure to address the governing framework set out in United States v. Hubbard, 650 F.2d 293 (D.C. Cir. 1980).  See Minute Order of Mar. 31, 2026.  The Shofners have now renewed their request.  See ECF No. 5 (Second Sealing Mot.).

Plaintiffs' Motion arises from concerns that the Complaint contains "sensitive information relating to personal safety, foreign-related legal procedures, and ongoing matters involving foreign government entities."  First Sealing Mot. at 1.  Two flaws, however, pervade their request: the scope of information Plaintiffs have redacted far exceeds the narrow request

1

they claim to advance, and the harms they invoke — threats from Defendants themselves — are harms that sealing cannot prevent.  The Court will therefore deny the Motion without prejudice.

## I.      Legal Standard

Generally, a plaintiff or petitioner filing a civil action must identify the parties and file on the public docket.  See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1).  "The starting point in considering a motion to seal court records is a strong presumption in favor of public access to judicial proceedings."  Hardaway v. D.C. Hous. Auth., 843 F.3d 973, 980 (D.C. Cir. 2016) (quoting EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1409 (D.C. Cir. 1996)).  When a party seeks to overcome this presumption and seal court records, courts engage in the six-factor inquiry described in Hubbard).  Those factors are:

(1) the need for public access to the documents at issue;
(2) the extent of previous public access to the documents;
(3) the fact that someone has objected to disclosure, and the identity of that person;
(4) the strength of any property and privacy interests asserted;
(5) the possibility of prejudice to those opposing disclosure; and
(6) the purposes for which the documents were introduced during the judicial proceedings.

Nat'l Children's Ctr., 98 F.3d at 1409 (citing Hubbard, 650 F.2d at 317–22).

## II.      Analysis

Before turning to the Hubbard factors, the Court pauses on the unusual nature of Plaintiffs' request.  The customary approach to protecting sensitive information in a complaint is for the plaintiff to file a single operative complaint on the public docket with targeted redactions, while submitting an unredacted version of that same complaint under seal for the Court's review.  See, e.g., CCC of DC Ltd. Co. v. Fed. of Kings Point Ass'ns, 2025 WL 2719280, at *1 (D.D.C. Sept. 24, 2025) (allowing partial seal "to redact portions of the 'Introduction,' 'Factual Background,' and 'Causes of Action'").  At first glance, Plaintiffs seem to follow the right path

by identifying five categories of information that warrant protection: the identity and location of Kelly Shofner's mother, the identities of witnesses and associates in China, the contents of certain recorded conversations, Plaintiffs' residential address, and specific numerical details of financial transactions.  See Second Sealing Mot. at 8.

What Plaintiffs have actually done, however, is markedly different.  They have filed on the public docket a skeletal eight-page pleading that is bereft of substantive allegations and instead points the reader to a separate document that exceeds 300 pages and was submitted under seal.  See Compl. at 4 ("Plaintiffs assert TVPA jurisdiction based on allegations contained in the sealed, unredacted Complaint submitted to the Court."); id. at 6 ("[ATS] allegations appear only in the unredacted Complaint filed with the Court.").  Although Plaintiffs disclaim any intention "to seal the entire case," First Sealing Mot. at 2, the practical effect of what they propose is indistinguishable from wholesale sealing of the operative Complaint.

A second difficulty also attends the Motion.  The harms Plaintiffs invoke to justify sealing are, by their own account, harms threatened by Defendants and affiliated actors in Shenyang.  See Second Sealing Mot. at 1 (sealing required because "those responsible for the conduct alleged . . . monitor these proceedings and respond to developments with coercive action").  But Defendants are the parties Plaintiffs have chosen to sue, and they will necessarily learn of the allegations against them as this litigation proceeds.  A theory of sealing premised on shielding the contents of a pleading from the very parties entitled to answer it asks for a form of protection that sealing cannot provide.  These errors inform the Hubbard analysis that follows.

The first factor — "the need for public access to the documents at issue," Nat'l Children's Ctr., 98 F.3d at 1409 — weighs strongly against sealing.  The documents Plaintiffs seek to keep from public view are not discrete exhibits, a narrow set of paragraphs containing

3

sensitive information, or peripheral filings.  See FTC v. Seven & I Holdings, 2023 WL 11730304, at *1 (D.D.C. Dec. 6, 2023) (allowing "targeted" redactions aimed at confidential business information).  They instead constitute the operative pleading — the very document that invokes this Court's jurisdiction and defines the contours of the anticipated litigation.  See United States ex rel. Durham v. Prospect Waterproofing, Inc., 818 F. Supp. 2d 64, 69 (D.D.C. 2011) ("When [plaintiff] filed his Complaint, his purpose was for his allegations to be the basis of a potential trial," and "there is a strong presumption for public access weighing in favor of unsealing the Complaint.").  Plaintiffs' proposed substitute does not cure the problem.  The eight-page shell on the public docket deprives the public of precisely what the presumption of access is meant to secure: the ability to understand the cause of action, the theory of liability, and the basis on which a court will eventually adjudicate the dispute.

The second factor — "the extent of previous public access to the documents," Nat'l Children's Ctr., 98 F.3d at 1409 — carries little weight on the present record.  A court assessing this factor "consider[s] the public's previous access to the sealed information, not its previous access to the information available in the overall lawsuit."  CNN v. FBI, 984 F.3d 114, 119 (D.C. Cir. 2021).  Plaintiffs represent that a narrow set of information has not been publicly disclosed: the identity and medical condition of Kelly Shofner's mother, witness identities, recorded conversations, Plaintiffs' residential address, and certain bank-transaction details.  See Second Sealing Mot. at 2–3.  To the extent those representations are accurate, this factor provides some support for protecting those items.  But Plaintiffs' representations on this point describe a narrow set of information they say warrants protection, not the scope of what they have actually withheld from the public docket.  The redactions Plaintiffs have in fact imposed sweep far

beyond those categories to encompass the operative Complaint in its near entirety.  This factor therefore does not support the sealing Plaintiffs request.

Plaintiffs gain some traction on the third factor.  "[T]he fact that a party moves to seal the record weighs in favor of the party's motion."  Zapp v. Zhenli Ye Gon, 746 F. Supp. 2d 145, 149 (D.D.C. 2010).  The Shofners have so moved, and, as is common at this stage, no objection to the Motion has been lodged.  See Second Sealing Mot. at 3.

The fourth factor — "the strength of any property and privacy interests asserted," Nat'l Children's Ctr., 98 F.3d at 1409 — requires careful treatment.  Some of the Shofners' asserted interests have independent footing.  Residential addresses pertaining to Plaintiffs and their minor child implicates ordinary privacy protections, and specific bank-transaction details implicate financial-privacy norms that this Court routinely credits.  See Second Sealing Mot. at 3–5; Fed. R. Civ. P. 5.2(a).  Those interests could support targeted redaction of the relevant items within a publicly filed complaint.  But, once more, targeted redactions are not what Plaintiffs have proposed in their sealed Complaint.

Even setting aside the discrepancy in scope, a majority of Plaintiffs' asserted interests — the identity and location of Kelly Shofner's mother, witness identities, and recorded conversations — rest on a risk of retaliation primarily carried out by Defendants.  See Second Sealing Mot. at 1.  The Court does not discount the seriousness of those representations, particularly given the fact that Kelly Shofner's father was allegedly detained after this suit was filed.  Id.  But as noted above, sealing the Complaint from the public docket cannot shield Plaintiffs from Defendants, who will learn of the allegations lodged against them as this litigation proceeds.  This factor may support some measure of protection for discrete items of particularized information, but it does not support the wide-scale sealing Plaintiffs request.

The fifth factor — "the possibility of prejudice to those opposing disclosure," Nat'l Children's Ctr., 98 F.3d at 1409 — looks to "whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal." United States v. All Assets Held at Bank Julius Baer & Co., 520 F. Supp. 3d 71, 85 (D.D.C. 2020) (quoting Durham, 818 F. Supp. at 68). The Shofners advance several theories of prejudice, but none moves the needle. For instance, Plaintiffs invoke the risk that Kelly Shofner's mother, as well as Plaintiffs and their minor child, could face personal harm. See Second Sealing Mot. at 4–5. As grave as those harms may be, they do not constitute legal prejudice within the meaning of this factor. See generally Vanda Pharms., Inc. v. FDA, 539 F. Supp. 3d 44, 57 (D.D.C. 2021).

Plaintiffs' other theories of prejudice carry slightly more credibility. They contend that disclosure would enable Defendants and others to intimidate witnesses, destroy evidence, and "coordinate testimony." Second Sealing Mot. at 6. Witness intimidation and the destruction of evidence, if they occurred, would indeed constitute cognizable legal prejudice. The preparation of testimony, by contrast, describes the ordinary operation of adversarial litigation. Even crediting the first two theories, they cannot support sealing for the same reason explained above: the witnesses Plaintiffs fear will be intimidated and the evidence they fear will be destroyed are subjects Defendants will learn of during this litigation regardless of whether the Complaint is sealed from the public.

The sixth and final factor — "the purposes for which the documents were introduced during the judicial proceedings," Nat'l Children's Ctr., 98 F.3d at 1409 — weighs strongly against sealing. Disclosure is the norm where "the parties explicitly intended the Court to rely on [the sealed] materials in adjudicating their dispute." Vanda Pharms., 539 F. Supp. 3d at 57 (citation omitted). Plaintiffs "voluntarily commenced a public proceeding . . . and invoked the

6

jurisdiction of this Court to do so." Upshaw v. United States, 754 F. Supp. 2d 24, 30 (D.D.C. 2010).  As they explain, the information they seek to seal was "introduced for the purpose of establishing the factual basis for Plaintiffs' legal claims."  Second Sealing Mot. at 7.  The redacted information, therefore, is not merely relevant to the central claims in this litigation; it comprises the substance of those claims.  Cf. United States ex rel. Grover v. Related Cos., 4 F. Supp. 3d 21, 28 (D.D.C. 2013)  ("The more relevant a pleading is to the central claims of the litigation, the stronger the presumption of unsealing the pleading becomes.").

In sum, only the third factor clearly cuts in Plaintiffs' favor.  That outcome follows largely from the two problems identified at the outset: Plaintiffs' redactions sweep far beyond the narrow categories they say warrant protection, and sealing cannot shield Plaintiffs from Defendants themselves, who will learn of the allegations as this litigation proceeds.  The Motion will therefore be denied.

The Court's denial does not foreclose a further, properly structured submission.  Should Plaintiffs' wish to proceed, any renewed motion should be accompanied by (1) a single operative Complaint filed on the public docket, containing targeted redactions limited to particularized categories of sensitive information, and (2) an unredacted version of that same Complaint filed under seal for the Court's review.

The Court accordingly ORDERS that:

1. Plaintiffs' [5] Motion for Leave to File Under Seal is DENIED WITHOUT PREJUDICE;

2. Within fourteen days of the Court's Order, Plaintiffs shall either file a new Motion and Complaint or a Notice advising the Clerk of the Court that they wish

to proceed with filing the [1] Complaint, [2] Motion, and [5] Motion on the public docket; and

3. If Plaintiffs do not do so within fourteen days, the Clerk is directed to terminate the case.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: April 24, 2026

8